SAMUEL W. CASS, Respondent, v. MARCUS M. CASS, Individually, and MARCUS M. CASS, as Trustee of SAMUEL W. CASS, Appellant, Impleaded with Another.

*Jurisdiction — equity action — an adequate remedy at law, if it exists, must be alleged — the Supreme and Surrogate's Courts have concurrent jurisdiction over trustees, executors and administrators.*

The distinction between actions at law and suits in equity has been abolished, and where, in an equity action, the defendant desires to insist that an adequate remedy exists at law he must set it up in his answer.

The Supreme Court and the Surrogate's Court have concurrent jurisdiction to call to account, at the instance of any one interested in the fund, a trustee, executor or administrator, and to pass upon his acts.

*Semble,* that the pendency of proceedings in one court would be a bar to any action or proceeding in the other.

Appeal by the defendant Marcus M. Cass, as trustee of Samuel W. Cass, and individually, from an order, entered in the clerk's office of Schuyler county on the 30th day of June, 1891, referring this action to a referee to hear, try and determine the same.

The order appealed from recites that it was made "upon the affidavits of Orlando Hurd, C. H. Everts, Frances Cass and George D Norman, and upon the proceedings heretofore had in this action, including the pleadings and orders heretofore made, and upon affidavits of Marcus M. Cass and Marcus M. Cass, Jr." The complaint alleges that Cynthia N. Freer, of the town of Dix, now in the county of Schuyler, died on the 1st of October, 1853, leaving her last will and testament and codicil, which were duly admitted to probate; and that by said will, a legacy of both real and personal property was bequeathed to the plaintiff; the will and codicil are annexed and made a part of the complaint; and the complaint alleges that the property so bequeathed and devised, some twenty thousand dollars, went into the hands of and "was received by the said Marcus M. Cass and Orlando Hurd, as trustees for this plaintiff under said will." It also alleges "that the said Marcus M. Cass and Orlando Hurd have never rendered, made or filed an account of their proceedings as such trustees to or with any court having jurisdiction thereof." That on the 27th of February, 1891, the plaintiff caused a petition to be filed in the surrogate's office of Schuyler county, and a citation to

be issued thereon requiring the said Cass and Hurd to account in said Surrogate's Court, as trustees of this plaintiff, to the end that the amount justly due from them to this plaintiff might be ascertained. That Cass and Hurd appeared on the return of the citation in the Surrogate's Court, and that an answer to the petition was filed. That "on or about the 13th day of April, 1877, the said Orlando Hurd passed over securities belonging to the trust fund so created for this plaintiff to the said Cass, amounting to the sum of $14,959.88, with accumulated interest, which were received by him as such trustee, since which time he has wrongfully used, invested and appropriated a large portion thereof, so that the same, the pretended securities or obligations taken therefor, are comparatively worthless and of little or no value." That the trustees have given no security for the trust fund, and that since the probate of the will they have become insolvent. "That the said trustees now have money, or should have, to the amount of upwards of $20,000, to which this plaintiff is entitled, and which they have been repeatedly called upon to pay over, all of which they have neglected and refused to do."

In the prayer to the complaint the plaintiff asks "that they and each of them be required to render their and his account as such trustees, or trustee as aforesaid, that the same may be judicially settled and determined, and that any moneys found due to the plaintiff may be paid over to him. That the defendants and each of them be required to give security for any funds that may remain in their hands, or that they and each of them may be removed as such trustees, and some suitable and proper person or persons may be appointed in their place, to whom such trust fund may be paid over, or for such other or further relief as may be proper in the premises."

The answer of Marcus M. Cass denies many of the allegations in the complaint, and it alleges that, "by and with the consent of the plaintiff in this action certain securities, or alleged securities, amounting to $14,759.88, were transferred to this defendant by the said Orlando Hurd, as such trustee, which was the only sum received by this defendant; and the said securities, and the amount thereof, were so received by him at the request of the said plaintiff, and he thereupon approved of the same as the only amount of said trust fund, and approved of the character thereof as being the only securities in which he was the beneficiary under said trust." * * *

The said defendant alleges that he has faithfully discharged his duty, and has, "from time to time, paid over to him all sums connected therewith, in pursuance of the directions of said will of Cynthia Ann Freer, deceased, whereby the same was created;" and he further "avers that he has paid the said plaintiff from time to time, and at different times, between the time that he accepted said trust in 1877 and before the commencement of this suit, a large sum of money, and more than sufficient to pay to him the income received by him on account of such trust, and directed to be paid to said plaintiff; and has, in addition thereto, paid him an additional sum to the amount of more than seven hundred dollars, including expenses, commission and other just charges, upon said fund, for which he has from time to time rendered a statement to the plaintiff, and at all times, when requested so to do, he has rendered and delivered to him such statements, all of which were approved, when so rendered, by the plaintiff, as correct and proper." That "he is advised and believes the Surrogate's Court of the proper county has full and ample power and authority to hear and determine said accounting, and that this court ought not to have or to entertain jurisdiction thereof or otherwise entertain this suit;" and he also sets up the statute of limitations. In the affidavit of Frances Cass, used upon the motion, it is stated "that in February last said Everts did institute proceedings in this matter before the Surrogate of Schuyler county, in which said defendant appeared and filed his verified answer and such proceedings were discontinued, * * * after which, and on the seventeenth day of April, this action was commenced."

In an affidavit used upon the motion to refer, Mr. Everts, the attorney for the plaintiff, states · "That, to deponent's personal knowledge, the trial of this action will involve the examination of a long account, embracing over five hundred different items, including the computation of interest on over seventy-five different items and rests extending over a period of thirty years."

In the affidavit of Frances Cass it is stated that the defendant has "over $600, the income of said trust fund, which he has been directed by the plaintiff to pay over to this deponent, and which he has refused to do."

In the affidavit of Marcus M. Cass, Jr., one of the attorneys for the appellant, it is stated, "That this suit involves, as deponent

verily believes, important and intricate questions of law which will necessarily have to be determined upon the trial of this cause;" and he also adds, "That there is a further legal question which will arise therein concerning the solvency of the defendant Cass and his fitness to continue as a trustee therein."

*John J. Van Allen* and *Marcus M. Cass, Jr.,* for the appellant.

*Charles II. Everts,* for the respondent.

HARDIN, P. J.:

Appellant in his argument before us urges certain objections to the order to show cause, which is in the nature of a notice of motion, and asks us to reverse the order on alleged technicalities and irregularities in the nature of preliminary objections, but upon turning to the order we are unable to discover that such objections were taken at the Special Term; it is too late for the appellant to raise them on this appeal in the first instance.

( 2.) The appellant insists that the complaint does not state facts sufficient to constitute a cause of action, and insists that it must appear on the face of the complaint that the party coming into a court of equity has not an adequate remedy at law.

( *a.* ) In answer to such position taken by the appellant it may be observed that section 3339 of the Code of Civil Procedure provides as follows: " There is only one form of civil action. The distinction between actions at law and suits in equity and the forms of those actions and suits have been abolished."

( *b.* ) It has lately been held by the Court of Appeals that: " The defendant, in an equity action, in order to insist that an adequate remedy exists at law, must set it up in his answer." ( *Ostrander* v. *Weber,* 114 N. Y., 96.)

The judge at Special Term correctly observed that no defense of that character is pleaded.

( *c.* ) It is insisted in behalf of the appellant " That the Surrogate's Court has complete and adequate power to administer the machinery necessary to force an accounting of the trustee and to settle the same without invoking the aid of a court of equity;" and the learned counsel for the appellant refers to section 2802 *et seq.* of the Code of

Civil Procedure. It may be conceded that the proper surrogate
would have jurisdiction of the trustee and that proceedings might
be initiated in the Surrogate's Court to compel him to account and
perform his duties as trustee, and that such proceedings might be
instituted at the instance of any one interested in the fund in the
hands of the trustee, but we do not understand that those sections
of the Code or any other legislation has deprived the Supreme Court
of its jurisdiction over trustees and trust funds. In *Wager* v. *Wager*
(89 N. Y., 168), it was said : "Where complete relief can be obtained
in the Surrogate's Court, a court of equity may, in its discretion,
decline, on that ground, to entertain an action for an accounting or
other relief against executors, but the proposition that the court has
no jurisdiction in such a case cannot be sustained." When this
action was commenced no proceedings before the Surrogate were
pending, instituted by the plaintiff or by the defendant, for an account-
ing or a judicial settlement of the accounts of the trustee.

In *Rogers* v. *King* (8 Paige, 210), it was held that the jurisdic-
tion of this court and of the Surrogate, over an executor or admin-
istrator to call him to account, were concurrent ; and it was further
held, in that case, that where a bill was filed in chancery against an
executor or administrator for an accounting that in a subsequent pro-
ceeding brought before the Surrogate, the pendency of the suit in
chancery might be set up before the Surrogate in the nature of a
plea in abatement, and will constitute a valid objection to the pro-
ceedings therein.

The doctrine of that case was referred to and followed in *Groshon*
v. *Lyon* (16 Barb., 467), and, after stating the rule as laid down in
*Rogers* v. *King* (*supra*), the court observed : "The converse of the
rule thus laid down would also hold. If there were a decree before
the surrogate to account, it would be a bar to any proceeding for an
account in the Court of Chancery, in all cases where full relief could
be had before the Surrogate."

In *Wood* v. *Brown* (34 N. Y., 337), the jurisdiction of this court
over trustees and executors was a subject of inquiry, and, after
referring to the statute conferring jurisdiction upon surrogates, it
was observed by Judge MORGAN, who delivered the opinion of the
court, as follows : "It does not, however, follow that a court of
equity may not exercise the same or concurrent jurisdiction ; " and

later on in the opinion he further adds : " But, then, it must be conceded that courts of equity, as a general rule, have a concurrent. jurisdiction with Surrogates' Courts in matters of accounting, as against executors and administrators. (*Rogers* v. *King*, 8 Paige, 2!0.) These courts may furnish a more comprehensive remedy, for they may proceed by injunction to restrain the further proceedings of executors until an account can be taken, if there is danger of injury to the estate. The case at bar was a proper one to call on the defendant to render an account of his proceedings."

In *Christy* v. *Libby*, 5 Abb. [N. S.], 192), an action was brought to compel the defendant to account to the plaintiff for the assets he had received, and, in the course of the opinion, it was said : " The provisions of the Revised Statutes conferring the jurisdiction upon surrogates was to provide an inexpensive and summary mode of bringing executors, etc., to account, but did not take away the power theretofore exercised by courts of equity to afford this species of relief. It still exercises a concurrent and, in some cases, an exclusive jurisdiction. (*Rogers* v. *King*, 8 Paige, 210 ; Will. on Eq. Jur., 560.) "

In *Christy, as Administratrix,* v. *Libby* (35 How. Pr., 119) it was held, viz. : " Courts of equity have jurisdiction to call upon executors and administrators to account. Such power was frequently exercised by the late Court of Chancery, although the surrogate had jurisdiction over such proceedings. The Revised Statutes do not confer on the surrogate exclusive jurisdiction over proceedings to compel executors, administrators or collectors to account." In the course of the opinion in that case, VAN VORST, J., said : " Courts of equity take cognizance of the conduct of executors, administrators and other trustees. (3 Blackstone's Com., 437 ; Willard's Equity Jurisprudence, 88, 490.) "

In *Haddow* v. *Haddow* (3 N. Y. Sup. Ct. Rep. [T. & C.], 777) it was held : "A court of equity has jurisdiction to compel an accounting to parties entitled to an estate from those who have it under their control, when the proper parties are in court." This case was affirmed in the Court of Appeals (59 N. Y., 320), and in delivering the opinion of the court, RAPALLO, J., says nothing inconsistent with the doctrine of the cases to which we have already referred.

Appellant's counsel calls our attention to *Seymour* v. *Seymour* (4 Johns. Ch., 409). We have examined it and find nothing inconsistent with the doctrine of the cases already referred to ; in the case it was held that "a surrogate has concurrent jurisdiction with this court to compel administrators to account and make distribution of the estate ; " and it was further held that, after administrators had been brought before the surrogate "for an account and distribution of the intestate's personal estate, this court will not, without some special and satisfactory reason, interfere with the proceedings of the surrogate, by granting an injunction and sustaining a bill for general relief." We think the case does not aid the argument of the appellant.

( 4.) The appellant contends that the reference ought not to have been ordered because the trial of the issue involves difficult questions of law ; the affidavit on that subject is a general averment and does not conform to the requirements of the adjudged cases.

In *Salisbury* v. *Scott* (6 Johns., 329) it was said : "Where a motion to refer a cause is repelled on the ground that questions of law will arise on the examination of the cause, the party must state what the points of law are, so that the court may judge whether they are material or difficult, and will necessarily arise, and that we may be satisfied whether the referees be a proper tribunal for the trial of the cause ; otherwise by the general affidavit, all references may be prevented." This case was referred to with approval by Judge PAIGE in *Dewey* v. *Field* (13 How. Pr, 439).

( 5.) The Special Term has found, in effect, that the trial of the issues will require the examination of a long account. We think, upon a full consideration of all the matters alleged in the pleadings and in the affidavits before the Special Term, the finding was warranted, and we are not disposed to interfere with the same.

In *Welsh* v. *Darragh* (52 N. Y., 592), in the course of the opinion delivered, Chief Justice CHURCH says : "This court will not review the finding below, that the action involves the examination of a long account if the facts will warrant such a finding. If the facts show that the examination of a long account may be necessary, and the court below has decided to refer the action, this court will not interferf. It is only when it is palpable that no such account can be involved that an appeal will lie to this court. (*Kain* v. *Delano*, 11 Abb. [N. S.], 29.)"

In one of the affidavits used upon the motion it was stated " this action will involve the examination of a long account embracing over five hundred different items, including the computation of interest on over seventy-five different items and rests extending over a period of thirty years."

We think the conclusion reached at the Special Term should be sustained and the order affirmed, with ten dollars costs and disbursements.

WILLIAMS and MERWIN, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements.